IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DONNALEE LARSEN,<br><br>Plaintiff,<br>v.<br><br>GRANGER MEDICAL CLINIC,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:17-cv-1308 DBP<br><br>Magistrate Judge Dustin B. Pead |

Before the court is Defendant's Motion for Summary Judgment. ECF No. 19. The parties consented to the undersigned conducting all proceedings, including entry of final judgment. ECF No. 10. On February 28, 2020, the court heard argument on the motion. David Holdsworth represented Plaintiff Donnalee Larsen and Stephen Hester represented Defendant Granger Medical Clinic. As set forth below, because Ms. Larsen fails to establish a prima facie case under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, Defendant's motion is granted.

## BACKGROUND

The court examines "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The following facts are not genuinely disputed. Prior to October 1, 2014, Ms. Larsen worked as a medical assistant for 36 years, with the majority of those years spent working for Dr. Colin Kelly. Compl. at ¶8, ECF. No. 2. Over her career Ms. Larsen earned a reputation as a competent, caring, efficient and dependable employee. *Id.* at ¶9. Her typical job duties as a medical assistant included weighing and measuring patients, drawing blood, preparing and administering shots, and office duties. *Id.* at

¶10. On October 1, 2014, Defendant Granger Medical Clinic (Granger) acquired Dr. Kelly's practice and retained Ms. Larsen as a medical assistant to work with Dr. Gallagher. *Id.* at ¶8. Ms. Larsen continued to perform her same duties after the transition working with Dr. Gallagher. *Id.* at ¶¶10-11.

After Ms. Larsen had been working for Granger for approximately eight-and-a-half months, Aspen McPhie, a medical assistant, came to observe her and other employees perform their jobs. *Id.* at ¶14. McPhie followed Ms. Larsen on June 16, 2015. *Id.* at ¶15. The next day on June 17th, McPhie provided a paper to Ms. Larsen titled "things to remember" (List). On the List were Ms. Larsen's job duties that according to Ms. McPhie, needed to be performed in a different manner based on McPhie's observations from the prior day. Ms. McPhie witnessed Ms. Larsen allegedly failing to wear gloves, not closing exam room doors, and licking blood spots off her thumb. *Id.* at ¶16. Ms. Larsen denies she engaged in some of the conduct, such as licking her thumb. *Id.* at ¶18. Yet other items on the list, such as not wearing gloves or closing exam doors, were practices Ms. Larsen "followed for many years" without any issues or concerns being raised by prior physicians or managers. *Id.*

Trang Dao, a manager at Granger, had Ms. Larsen read the List and initial each point to establish that (1) she understood what needed to change and (2) she was amenable to performing her job consistent with Granger's requirements. *Id.* at ¶17. Although Ms. Larsen disagreed with some items on the List, such as licking blood spots from her thumb, she expressed an unqualified willingness to perform her job duties in conformity with what was identified on the List. *Id.*

When Ms. Larsen arrived at work the next day on June 18, 2015, she learned that her employment was being terminated immediately. *Id.* at ¶¶19-20. The office manager said her

termination was a "done deal". *Id.* at ¶21. Prior to her termination Dr. Gallagher was contacted to discuss the decision to let Ms. Larsen go. *Id.* at ¶60. Nothing in the record, however, indicates that Dr. Gallagher was consulted prior to the decision to terminate Ms. Larson. After her termination Granger replaced Plaintiff with a succession of younger employees. *Id.* at ¶¶25-26. Subsequently, Ms. Larsen learned that at some point following her termination, Dr. Gallagher was telling patients that Ms. Larsen was "worn out", "older than she looks", and that "once people get to a certain age, it is really hard to work in this kind of environment." *Id.* at ¶¶27-28. On September 17, 2015, Ms. Larsen filed a Charge of Discrimination with the Utah Antidiscrimination and Labor Division of the U.S. Equal Employment Opportunity Commission. *Id.* at ¶4. This suit followed in December 2017. ECF No. 1.

## STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008). When employing this standard, the court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

"A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the

proper disposition of the claim" *Crow v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). A movant who does not bear the ultimate burden of persuasion at trial, need not negate the other party's claim. *See Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). Rather, the movant needs to point to a lack of evidence for an essential element of the opposing party's claim. *See id.* After the movant has met this initial burden, the onus shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The non-moving party must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

DISCUSSION

When there is no direct evidence of age discrimination, which Plaintiff acknowledges is the case here, the Tenth Circuit uses the three-stage burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56 (1981), to prove age discrimination exists. *See Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988). Under this proof system, to set forth a prima facie case of age discrimination, a plaintiff must ordinarily show that (1) she is within the protected age group; (2) was doing satisfactory work; (3) was terminated; and (4) she was replaced by a younger person. *See Wilkerson v. Shinseki,* 606 F.3d 1256, 1266 (10th Cir. 2010); *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir.1991). The evidentiary burden of establishing a prima facie case by a preponderance of the evidence is "not onerous," particularly because the burden is "one of production, not persuasion; it can involve no

credibility assessment." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (internal quotation marks and citations omitted).

If a plaintiff makes a prima facie showing, the burden next shifts to the employer to state a legitimate "nondiscriminatory reason" for its "adverse employment action." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). If the employer satisfies this burden, the burden shifts back to the plaintiff for the third stage. At the third stage of the discrimination analysis, the plaintiff must show that age was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretextual. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir.2000).

Additionally, in this circuit, it has been "long held that a plaintiff must prove but-for causation to hold an employer liable under the ADEA." *Jones v. Odlahoma City Public Schools*, 617 F.3d 1273, 1277 (10th Cir. 2010). This causal standard does "not require[] [plaintiffs] to show that age was the sole motivating factor in the employment decision." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010) (quotations omitted). Instead, an employer may be held liable under the ADEA if other factors added to taking an adverse action, as long as "age was the factor that made the difference." *Id.*; *Jones*, 617 F.3d at 1277.

With this backdrop, the question here is whether Ms. Larsen's evidence establishes an inference that Granger discriminated on the basis of age. If she fails to make out a prima facie case, she cannot avoid summary judgment.

Defendant argues Ms. Larsen fails to set forth a prima facie case of age discrimination because she did not perform satisfactory work. Further, even if Plaintiff could establish a prima facie case under the ADEA, Plaintiff's evidence fails to establish that age was a determinative factor in Granger's decision to terminate her.

5

Plaintiff asserts the following evidence establishes she was performing satisfactory work and creates an inference that Granger engaged in age discrimination by terminating her: (1) she always did things the same way previously and for 36 years that work was satisfactory; (2) her work was satisfactory for the new doctor, Dr. Gallagher, for eight-and-a-half months prior to being fired; (3) she was not given enough time to change her ways and many companies follow a policy of progressive discipline; (4) Dr. Gallagher told patients after she was terminated that Ms. Larsen was "worn out", "older than she looks", and that "once people get to a certain age, it is really hard to work in this kind of environment"; (5) Plaintiff received a COBRA notice prior to her termination; and (6) the receptionist at Granger, Libby Fenton, was also overserved and given a list but she was not terminated.

Even in viewing the evidence under the light most favorable to Ms. Larsen, and in drawing reasonable inferences, Ms. Larsen has not established that she was performing her job in a satisfactory manner. Past satisfactory work does not provide evidence of current satisfactory work nor does it provide evidence of pretext. *See, e.g., [Albo v. Durango School Dist. No. 9-R, 2007 WL 2684533, at \*7 (D. Colo. Sept. 7, 2007)](#)* ("A statement that an employee violated a specific work rule in the present or recent past does not contradict a statement that the same employee performed his job satisfactorily in the more distant past. In the context of this case, the plaintiffs' past satisfactory work evaluations do not provide evidence of pretext."). Ms. Larsen admitted she did many things set forth on the List, such as not closing patient doors, not wearing gloves when administering vaccines and opening needle caps with her mouth. *See* Pla.'s Mtn. Ex. C Plaintiff's Responses to List, [ECF No. 19-1](#) ("I didn't always close the doors when I put patients in" "I have never worn gloves Dr. Kelly left it up to me" "That's how I learned to give shots it was easier to do that so I had control of the child, My [sic] mouth was barely on the very

top of the cap"). The mere fact that these practices were not disciplined in the past is insufficient to establish she was performing satisfactory work. There is no evidence that Granger or McPhie targeted Ms. Larsen when McPhie came to observe employees on June 16, 2015. Rather other employees, such as Libby Fenton, were also notified that they needed to change and improve. Thus, even a lack of any correction during the eight-and-a-half months Ms. Larsen worked under Dr. Gallagher is insufficient to establish satisfactory work. Accordingly, Ms. Larsen has not established a prima facie case under the ADEA.

But even if she had, Ms. Larsen fails to show that age was the factor that made the difference in her termination, and in any event, the evidence also demonstrates a legitimate non-discriminatory reason for her termination. The fact that Ms. Larsen believed the List was a training document or that she was not given enough time to improve, such as in other companies, is immaterial. Dr. Mary Pennington, the Interim CEO of Granger, provided an unrefuted affidavit providing that she was the decision maker who decided to terminate Ms. Larsen. *See* Pennington Declaration p. 4, [ECF No. 20](). Dr. Pennington stated that Ms. Larsen was terminated due to the safety violations on the List, and concerns that many items on the List would subject Granger to liability under applicable federal and state laws. There is no evidence to dispute Dr. Pennington's statements. During oral argument Plaintiff questioned why the List made it into the hands of Dr. Pennington the Interim CEO. Yet, no deposition was taken of Dr. Pennington to refute her statements or provide any evidence as to why she received the List. Although the court views the evidence and makes all reasonable inferences in favor of Ms. Larsen, the court cannot enter the world of conjecture and draw a conclusion not supported by the evidence that Dr. Pennington targeted Ms. Larsen for her age.

Plaintiff next points to alleged age related comments made by Dr. Gallagher after her termination. These included that Ms. Larsen was "worn out", "older than she looks", and that "once people get to a certain age, it is really hard to work in this kind of environment." These comments do not demonstrate that Granger engaged in age discrimination for two reasons. First, Ms. Larsen has failed to show the requisite nexus between these alleged discriminatory statements and the decision to terminate her. The Tenth Circuit requires that "A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the company's termination decision …." *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132, 1140 (10th Cir. 2000); *see also Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (noting that the plaintiff "must demonstrate a nexus exists between these allegedly discriminatory statements and the hospital's decision to terminate her"); *Zoutomou v. Kennecott Utah Copper*, 2013 WL 1213386, *8 (D. Utah March 25, 2013) (finding the plaintiff failed to establish the required nexus between the allegedly discriminatory statement and the company's termination decision). Second, "age-related comments by non-decision makers are not material in showing the [defendant's] action was based on age discrimination." *Cone* 14 F.3d at 531. There is no evidence before the court that Dr. Gallagher participated in Granger's decision to terminate Ms. Larsen. Rather Dr. Mary Pennington, the Interim CEO, made that decision and informed Dr. Gallagher after the decision was made. Even if Dr. Gallagher "fought for her" as Plaintiff alleges, such putative advocacy apparently occurred after the decision to terminate.

Ms. Larsen received a COBRA notice before she was terminated and before McPhie presented the List to Ms. Larsen on June 17, 2015. Compl. ¶ 44. Plaintiff asserts this "fact supports an inference that Granger terminated her employment for reasons other than what it now articulates." Op. p. 48 fn. 5. Clearly the timing of the Cobra notice was unfortunate. A plain

reading of the notice, however, undermines Plaintiff's assertion. The notice is a "General Notice of COBRA Continuation Coverage Rights" that "outlines what constitutes a COBRA event and the length of time coverage can be continued." Pla.'s Mtn. Ex. D. p. 1, ECF No. 19-1 p. 13. The COBRA notice does not state that Plaintiff was terminated or was eligible for coverage due to a "qualifying event" which includes termination. Further, Dr. Pennington the decision maker, stated that the COBRA notice was not sent by Granger, but by its insurance company to all employees, and that it "had nothing to do with Granger's subsequent termination of [Plaintiff's] employment." Pennington Declaration p. 5, ECF No. 20. Once again there is nothing to refute Dr. Pennington's explanation other than Plaintiff's speculation that is not supported in the record.

Libby Fenton, the receptionist at Granger, was also observed by McPhie and given a list of corrective items. Despite receiving a list Fenton was not terminated by Dr. Pennington and instead, was given a Performance Improvement Plan. Based on the record it appears Fenton was younger than Ms. Larsen. In construing these circumstances broadly, it appears that Plaintiff may be attempting to craft a disparate treatment claim under the ADEA. But, the Supreme Court has held that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). The evidence here shows that Granger's motivating factor for terminating Ms. Larsen was not age. Thus, any disparate ADEA claim fails.

Finally, the court has also considered the evidence as a whole. After doing so, the court finds Plaintiff has failed to show the required but-for causation. The evidence does not indicate that age was the factor that made the difference in Granger's decision to terminate Ms. Larsen. *See Jones*, 617 F.3d at 1277. Therefore, summary judgment is appropriate.

ORDER

For the foregoing reasons, Defendant Granger Medical Clinic's Motion for Summary Judgment (ECF No. Docket No. 19) is GRANTED. The Clerk of the Court is directed to close this case.

DATED this 5 March 2020.

_____
Dustin B. Pead
United States Magistrate Judge